United States Court of Appeals,

Fifth Circuit.

No. 91-7126.

Hayden McILROY, Plaintiff-Appellant,

v.

PAINEWEBBER, INCORPORATED, Defendant-Appellee.

May 3, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before HILL,[*] KING and DAVIS, Circuit Judges.

PER CURIAM:

Hayden McIlroy, Plaintiff below, appeals the district court's denial of his motion to modify or vacate an arbitration award handed down by an arbitration panel of the National Association of Securities Dealers ("NASD"). McIlroy argues that the district court erred in failing to modify or vacate the award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("Arbitration Act"), and that it erred in excluding his submission of supplemental authority. For the reasons that follow, we affirm.

I. Facts

Appellant McIlroy, an experienced investor, purchased 40,000 shares of stock in Sooner Federal Savings & Loan Association ("Sooner") in 1987, through a broker at the Tulsa, Oklahoma office of Kidder, Peabody & Company. In March, 1988, Appellee PaineWebber, Incorporated ("PaineWebber") took over Kidder Peabody's Tulsa office and McIlroy became a PaineWebber client.

In June, 1988, after Sooner had reported several quarterly losses, McIlroy informed his PaineWebber broker, F. Stephen Allen, that he wanted to sell his Sooner stock, if possible without taking a discount on the price. Allen reminded McIlroy that Sooner stock was held by only a few investors and was, in consequence, difficult to sell. McIlroy did not enter a formal sell order and Allen did not locate a buyer for the stock.

In September, 1988, Allen informed McIlroy that another Sooner shareholder was preparing to sell a substantial amount of stock. Such a sale would force short sellers of Sooner stock to cover, driving the stock price up and allowing McIlroy to liquidate his shares at a favorable price. McIlroy

[*]Circuit Judge of the Eleventh Circuit, sitting by designation.

purchased an additional 10,000 shares but the stock sale never occurred. In October, 1988, McIlroy again asked Allen to sell his Sooner shares.

In November, 1988, some short sellers of Sooner stock entered the market. PaineWebber sold them 47,397 shares, and then an additional 1,600 shares, out of its own inventory, for a total price of $893,395.25. Allen assured McIlroy that he would sell McIlroy's stock in the next short cover transaction, which he believed would occur immediately. No short cover transactions occurred in November or December, 1988, and Sooner stock declined precipitously in value. In November, 1989, the Federal Savings and Loan Insurance Corporation placed Sooner into receivership. PaineWebber eventually sold McIlroy's stock at a price which left a $70,000.00 deficit in his trading account.

McIlroy submitted a claim for $1,033,750.00 in damages and costs to the National Association of Securities Dealers. PaineWebber counterclaimed for the deficit in McIlroy's account and moved to dismiss McIlroy's claim. After a hearing, a NASD arbitration panel found PaineWebber liable and awarded McIlroy $40,875.00. The panel dismissed PaineWebber's counterclaim and ordered each party to bear its own costs.

McIlroy filed a motion in Texas state court seeking either an upward modification of the award to $911,323.88[1] or vacation of the award. PaineWebber removed the action to federal court. While the motion was pending, McIlroy submitted to the court a letter and supplemental caselaw dealing with modification of arbitration awards. PaineWebber moved to strike the documents on the basis that McIlroy had not complied with local filing rules. The court granted PaineWebber's motion to strike and ruled on the merits that McIlroy failed to meet any of the grounds for modification or vacation of an award specified in the Arbitration Act. McIlroy filed this appeal.

II. Discussion

We review *de novo* the district court's order denying McIlroy's motion to vacate or modify *Forsythe Int'l, S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1020 (5th Cir.1990). Contrary to Petitioner's

---

[1]McIlroy apparently arrived at this figure by multiplying 50,000 shares by the price per share PaineWebber received in the sale.

suggestion, this *de novo* review does not leave us "free to correct the arbitration award" App.Br. at 10; rather, it is intended to reinforce the strong deference due an arbitrative tribunal. *Forsythe, supra* at 1021 ("In the arbitration context, granting the deference ordinarily due the district court risks forgetting the prior and critical deference due the findings of the arbitration panel."). Mindful of the limitations on our review of the arbitration award itself, we consider each of McIlroy's arguments in turn.

A. *Vacation*

Title 9 U.S.C. § 10(a) provides that a district court may vacate an award:

(1) Where the award was procured by corruption, fraud or undue means.

(2) Where there was evident partiality or corruption in the arbitrators....

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing ... or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).

In this circuit, section 10 of the Arbitration Act describes the only grounds upon which a reviewing court may vacate an arbitration award. *R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534 (5th Cir.1992); accord *Robbins v. Day,* 954 F.2d 679 (11th Cir.1992).[2]

McIlroy urged the district court to vacate the arbitration award on grounds that the award "was the product of such gross mistake as to imply failure to exercise honest judgment." D.Ct. Op. at 5. He offered no evidence of a "gross mistake" save the discrepancy between his claim and the

---

[2]Other jurisdictions have vacated arbitration awards for reasons independent of the grounds specified in section 10 of the Arbitration Act; for example, where an award is made in "manifest disregard of the law" or where it is "completely irrational" or "unfounded in reason and fact". See, respectively, *Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986); *French v. Merrill, Lynch, Pierce, Fenner & Smith Inc.,* 784 F.2d 902, 906 (9th Cir.1986); *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1050 (1st Cir.1977). At the time McIlroy filed this appeal, the applicability of this line of cases in the Fifth Circuit was unclear. During the pendency of the appeal, we declined to adopt "manifest disregard", or any other standard, as an addendum to section 10. *Perez, supra.* Consequently, we disregard McIlroy's arguments to the extent that they rely upon standards of review outside the scope of the Arbitration Act.

panel's award. Without deciding whether McIlroy's allegation was true, the district court found that he failed to meet any of the grounds for attacking an award listed in section 10 and denied the motion. We agree with the district court that McIlroy's allegations, standing alone, do not entitle him to vacation of the award under section 10 of the Arbitration Act.

B. *Modification*

Section 11 of the Arbitration Act governs judicial modification of arbitration awards and provides, in relevant part:

> [The] court ... may make an order modifying or correcting [an] award upon the application of any party to the arbitration—
>
> > (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award.
> >
> > (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> >
> > (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

McIlroy argued below that the panel had committed an "evident material miscalculation" under 11(a) because it was "impossible to calculate damages of only $40,875.00 arising out of the evidence presented at the hearing." The district court declined to modify the award "absent a specific showing of miscalculation of figures." D.Ct.Op. at 6.

In our recent decision in *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210 (5th Cir.1993), we adopted from the Sixth Circuit the following definition of an "evident material miscalculation" under section 11:

> "[W]here the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator "exceeded [his] powers...." *National Post Office v. United States Postal Service,* 751 F.2d 834, 843 (6th Cir.1985). We interpret the term "undisputed" to mean we should look to see whether there is any rational basis for disputing the truth of the fact. (citations omitted).

981 F.2d at 214.

On appeal, McIlroy offers no support for his contention that the arbitration panel committed an "evident miscalculation" except to point again to the discrepancy between the award he requested and the one he received. Receipt of less than one requests in an arbitration proceeding does not, standing alone, constitute a miscalculation under section 11 of the Arbitration Act. *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Burke,* 741 F.Supp. 191, 193 (N.D.Cal.1990).

The arbitration panel did not explain the rationale behind its award but it was not required to do so. *Antwine v. Prudential-Bache Securities, Inc.,* 899 F.2d 410, 412 (5th Cir.1990). The panel did list McIlroy's allegations, which included breach of duty, failure to execute a sell order, violation of federal and state securities laws, and breach of contract. The panel also noted PaineWebber's counterclaim for the balance owing on McIlroy's brokerage account. During two days of hearings, the panel heard PaineWebber's contentions that McIlroy's calculation of damages was speculative and that McIlroy had failed to mitigate his losses. Accordingly, the panel had several grounds upon which to base an award in McIlroy's favor and a wealth of data from which to calculate an appropriate award. We find no miscalculation evident in this record. As the Eleventh Circuit has remarked: "When ... parties agree[ ] to arbitration, they agree[ ] to accept whatever reasonable uncertainties might arise from the process," *Raiford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 1410, 1413 (11th Cir.1990). The size of an award is one such uncertainty, and a claimant's dissatisfaction alone will not support judicial modification of that award. We affirm the district court's denial of McIlroy's motion to vacate or modify the award.

C. *Excluded Material*

While McIlroy's motion was pending before the district court, he sent the judge, under a cover letter, a copy of new and arguably relevant caselaw. Local Rule 2.1(b) of the United States District Court for the Northern District of Texas concerns the form and filing of legal documents and provides that "all legal documents except discovery materials shall be filed directly with the Clerk's office for the appropriate Division and *shall not be sent directly to the Judge for filing.*" Rule 2.1(b). "Legal document" is broadly defined in Rule 2.1(a) to include "every pleading, petition, application, motion, brief, notice, demand, offer, request, proposed order, and any other paper to be made a part

of the record in any civil or criminal case." Rule 2.1(a). PaineWebber moved to strike McIlroy's submission for failure to comply with Rule 2.1(b). Concerned that the submission included new legal argument, the district judge granted PaineWebber's motion. McIlroy argues that the court erred in characterizing the submission as a legal document and in failing to accept and consider it.

We note, parenthetically, that the opinion at issue was subsequently reversed, such that prejudice to McIlroy is doubtful at best. In any event, we are satisfied that the district court acted well within its discretion in excluding the material.

For the foregoing reasons, we AFFIRM the judgment of the district court.