# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 2, 2011

Lyle W. Cayce
Clerk

No. 11-30357
Summary Calendar

ROY DANA MARTEL,

Plaintiff

v.

ENSCO OFFSHORE COMPANY; TORCH OPERATING COMPANY,

Defendants–Third-Party Plaintiffs–Appellees

v.

INGERSOLL RAND COMPANY,

Third-Party Defendant–Appellant

Appeal from the United States District Court for the
Western District of Louisiana
USDC No. 6:00-cv-1864

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 11-30357

In this appeal, Third-Party Defendant–Appellant Ingersoll Rand Company appeals a final judgment by the district court confirming a judgment in arbitration against Ingersoll.  We AFFIRM.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2000, Plaintiff Roy Dana Martel ("Martel") filed suit in the United States District Court for the Western District of Louisiana, alleging that he sustained injuries while a member of a casing crew on an Ensco Offshore Company ("Ensco") vessel.  Ensco and Torch Operating Company ("Torch") were the named defendants in Martel's suit.  Ensco and Torch thereafter named Ingersoll Rand Company ("Ingersoll") as a third-party defendant in the suit.  Martel eventually settled his claims against Ensco and Torch, while they maintained their third-party action against Ingersoll.

The district court ordered the third-party action to arbitration, and a judgment in arbitration was delivered to the parties on February 18, 2010.  The arbitrator determined the allocation of fault among the five parties involved, including 25% to Ensco, 15% to Ingersoll, and 50% to Martel for contributing to his own injuries.  The judgment in arbitration contained a clerical error, however, computing damages based on a $300,000 (three hundred thousand dollar ) total *ad damnun*, rather than the $3,000,000 (three million dollar ) total *ad damnun* to which the parties had agreed.  Thus, the arbitrator found that Ingersoll owed Ensco $45,000 (15% of $300,000), while it should have owed $450,000 (15% of $3,000,000).  The arbitrator was informed that he had used an incorrect total award figure, and he notified the parties that he intended to issue an amended judgment.  Counsel for both parties, however, requested that the arbitrator refrain from issuing an amended judgment while they attempted to work out other unresolved issues.  As a result, the arbitrator issued an Order Vacating Judgment in Arbitration on July 1, 2010, but did not immediately issue an amended judgment.

No. 11-30357

At a hearing on December 17, 2010, the arbitrator held that his previous judgment had contained only a mathematical error, rather than a substantive one, such that he had jurisdiction to correct it.  He also noted that the parties had agreed to the corrected $3,000,000 amount, and neither party had challenged the substantive findings set forth in the original judgment.  Therefore, the arbitrator reinstated his judgment of February 17, 2010, except that the monetary computations were amended to be based on a $3,000,000 total award, rather than $300,000.

After the arbitrator issued his amended judgment, Ensco and Torch moved to have the arbitration award confirmed by the district court.  Ingersoll, however, opposed confirmation of the amended award, and moved to vacate the amended judgment, stay all pending arbitration proceedings, and confirm the original judgment in arbitration.  On March 15, 2011, the district judge held a hearing regarding the parties' motions in relation to the amended judgment in arbitration.  On March 31, 2011, the district court issued a judgment granting Ensco and Torch's motion to confirm the arbitration award of December 17, 2010, and denying Ingersoll's motion to declare the arbitration proceedings closed, motion to vacate, motion to stay, and motion to confirm the original judgment in arbitration.  This appeal timely followed.

## STANDARD OF REVIEW

We review *de novo* a district court's confirmation of an arbitration award. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399-400 (5th Cir. 2006). "Our review of the award itself, however, is exceedingly deferential." *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004) (citation omitted).  Vacatur of an arbitration award will be permitted "only on very narrow grounds." *Id.*

3

No. 11-30357

## ANALYSIS

Ingersoll makes three separate, but related, arguments. First, it claims that once the arbitrator issued his original award, his jurisdiction over the matter terminated pursuant to the *functus officio* doctrine. Ingersoll further argues that because none of the prescribed procedures for vacating, amending, or revising a judgment in arbitration were followed here, the district court erred in confirming the amended judgment in arbitration. Therefore, the district court also erred in denying Ingersoll's motion to confirm the original judgment in arbitration. Conversely, Ensco and Torch maintain that the arbitrator retained the authority to issue an amended judgment, and that the district court properly confirmed that amended award.

Under the Federal Arbitration Act ("FAA"), there are four statutory bases upon which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). These are the exclusive grounds according to which a district court may vacate an arbitration award. *Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Ingersoll contends that the arbitrator in this case

4

No. 11-30357

exceeded his powers by vacating his original judgment, holding a subsequent hearing, and issuing an amended judgment, because under the *functus officio* doctrine, the arbitrator's power and authority over the case terminated once he issued his original judgment. Therefore, according to Ingersoll, the district court should have vacated the amended award pursuant to the FAA, 9 U.S.C. § 10(a)(4), and it should have confirmed the original judgment in arbitration.

*Functus officio* means that an officer is "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." *Black's Law Dictionary* 743 *(*9th ed., 2009). "Once a court of competent jurisdiction has confirmed that an arbitration decision is unambiguous and binding on the parties, the arbitrator becomes *functus officio* with respect to that portion of the arbitration award and lacks authority to reconsider those aspects of his decision that are unambiguous and binding." *Brown v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003). Here, the arbitrator's original award was not confirmed by the district court prior to the arbitrator vacating the award due to his mistake regarding the total award amount.

Furthermore, there are three recognized exceptions to the *functus officio* doctrine: "An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation." *Id*. at 219. In this case, Ensco and Torch maintain that the original judgment contained a "mistake which is apparent on the face of the award," while Ingersoll argues that the mathematical error is only apparent through reference to other documents and statements. In the original judgment, the arbitrator wrote that "the agreed *ad damnun* was established as $300,000.00," but the parties' joint stipulation that served as an exhibit to the arbitration hearing stated that the total *ad damnun* at issue was $3,000,000.

5

No. 11-30357

Thus, the arbitrator's judgment conflicted with the evidentiary documents on which he based his calculations.

In addition, at the hearing before the district judge in which Ingersoll requested that the original judgment in arbitration be confirmed, counsel for Ingersoll admitted that the arbitrator's use of the $ 300,000 award amount was an error. Counsel for Ingersoll agreed that the arbitrator had made a calculation error, and that the judgment contained a clerical error. As the Third Circuit stated in *Colonial Penn Insurance Co. v. Omaha Indemnity Co.,* a case quoted extensively in Ingersoll's brief, "[t]he exception for mistakes apparent on the face of the award is applied to clerical mistakes or obvious errors in arithmetic computation." 943 F.2d 327, 332 (3d Cir. 1991). The *Colonial Penn* court also recognized that "[p]ossibly, [the exception] could also be applied in a situation where the award on its face is contrary to a fact so well known as to be subject to judicial notice," though the court refrained from taking a position on that possibility. *Id.* We find that the arbitrator's use of $ 300,000 as the total award, rather than the agreed-upon $ 3,000,000, was a clerical error. Moreover, the original award was contrary on its face to a well-known, undisputed fact contained in a joint exhibit. Consequently, the mistake was subject to notice by the arbitrator, as it directly contradicted the exhibits in evidence.

The doctrine of *functus officio* is intended to prevent an arbitrator from changing his ruling due to outside influence. *See, e.g., Colonial Penn*, 943 F.2d at 331-32 ("The policy underlying this general rule is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." (internal quotation marks and citation omitted)); *Teamsters Local 312 v. Matlack, Inc.*, 916 F. Supp. 482, 485 (E.D. Pa. 1996), *aff'd* 118 F.3d 985 (3d Cir. 1997) ("This principle of functus officio is predicated on the

6

need for finality. It is also designed to prevent improper influences on an arbitrator to change his or her mind once a final decision is rendered."); *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995) ("Once they return to private life, arbitrators are less sheltered than sitting judges, and it is feared that disappointed parties will bombard them with ex parte communications and that the arbitrators, not being professional judges or subject to the constraints of judicial ethics, will yield."). The arbitrator in this case did not revisit the merits of his decision, or change his substantive ruling; he merely corrected a mistake on the face of the award that was recognized by all parties. As such, the arbitrator did not exceed his authority by vacating the original judgment and issuing an amended one.[1]

We also find that Ingersoll implicitly consented to the continuing jurisdiction of the arbitrator over this matter. Once Ensco and Torch notified the arbitrator that the original judgment contained a clerical error, the arbitrator informed the parties that he intended to issue an amended judgment. *Both* parties then requested that he refrain from doing so while they attempted to work out other issues. This Court has recognized that, "[a]s a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect

---

[1] Ingersoll argues: "The Federal Arbitration Act (9 U.S.C. § 1, et seq.) prescribes the manner and procedures for arbitrations in Federal Court actions," including the procedure for vacating, modifying, or correcting an award. However, the Act directs the manner in which a *district court* may vacate, modify, or correct an award. Therefore, the Act–including any limitations periods it places on a party's right to make a motion to vacate, modify, or correct–has no bearing on modification or clarification sought from an arbitrator, rather than a district judge. *See Witco*, 340 F.3d at 218 n.8 ("[T]he FAA's three month statute of limitations period governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate, modify, or correct an arbitration award. *See* 9 U.S.C. § 12. The FAA does not regulate the time in which the parties may request clarification of an arbitration award from the arbitrator.").

the integrity of formal trials." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990). As a result, "the parties and the arbitrator have full authority to establish the procedural rules of arbitration." *Local P-9, United Food and Commercial Workers Int'l Union, AFL-CIO v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir. 1985). They should not, however, "superimpose rigorous procedural limitations on the very process designed to avoid such limitations." *Forsythe*, 915 F.2d at 1022 (citation omitted). In the hearing before the district judge, counsel for Ingersoll admitted that the arbitrator "ha[d] jurisdiction to amend an error or vacate a judgment," but that "it's a procedural thing on how it has to be done." The parties in this case never entered into a written arbitration agreement adopting any formal rules of arbitration, such as those promulgated by the American Arbitration Association. Therefore, when the parties asked the arbitrator to hold off on issuing an amended judgment, they in essence set out the procedure they wished to follow. *See Witco*, 340 F.3d at 219 (finding that, in the context of clarifying an award, "in the absence of any contractual provision or formal arbitration rule expressly to the contrary, it seems clear that an arbitrator may exercise his power to clarify the terms of an award when he is asked to do so by parties mutually and without any party's objection within a reasonable period of time"). Furthermore, Ingersoll at that time did not claim that the arbitrator lacked jurisdiction to amend his judgment. "[B]ecause the advantages of arbitration are speed and informality, an arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him." *Forsythe*, 915 F.2d at 1022 (internal quotation marks and citation omitted). The arbitrator's actions here were an effort to fulfill his obligations appropriately and efficiently.

Finally, we agree with the district court that it is disingenuous for Ingersoll to have asked the arbitrator to wait to issue an amended judgment, to have admitted that the *ad damnun* used in the original award was a clerical

error, and to now claim that the arbitrator had no jurisdiction to amend his award and the original, incorrect judgment must stand. As noted *supra*, arbitration is intended to be a quick and informal alternative to litigation. *Forsythe*, 915 F.2d at 1022. By litigating this issue, Ingersoll has contravened that policy. Moreover, Ingersoll seeks to employ rules designed to further justice in order to confirm an award that would in fact be unjust, due to its basis on an admitted clerical error. We will not condone such gamesmanship.

"The federal courts will defer to the arbitrators' resolution of the dispute whenever possible. The Congressional policy of promoting arbitration requires that courts do not intrude unnecessarily into questions that have been settled by an arbitration process agreed to by the parties, lest the efficiency of the arbitration process be lost." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990). We find that Ensco, Torch, and Ingersoll consented to the arbitration that took place in this case. In addition, by amending the original judgment, the arbitrator corrected a clerical error, and his actions thus fell within the bounds of an exception to the *functus officio* doctrine. We therefore agree with the district court that the arbitrator's amended award, utilizing the correct $3,000,000 (three million dollar) *ad damnun*, should be confirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.